NO. 22-1782

# In the United States Court of Appeals for the First Circuit

TRINA WILKINS; JAMES BISHOP; LISA BISHOP; AMBER BRITTON;
TONI CORDOVA; JOHN CORTINA; JILL CORTINA; GEORGE DEMKO;
DOVAN HELTON; MARY HELTON; NATE BROOKS; SYDNEY JOHNSON;
PLAINTIFF D.J.; DAMON LAFORCE; MICHAEL MASULA; ERIN MASULA;
JAMES MATTHEWS; THOMAS OLSZEWSKI; DARLENE COOKINGHAM;
THOMAS STANZIANO; WENDY STANZIANO; EDDIE VIERS, individually as
surviving spouse of Teresa Viers, deceased, AND as Personal Representative of the
ESTATE OF TERESA VIERS; WILLIAM MCNEW; JEANNE WALLACE
individually as surviving spouse of Joseph Wallace, deceased, AND as
Personal Representative of the ESTATE OF JOSEPH WALLACE;
JAMES WALLACE; and SAMUEL WALLACE,

*Plaintiffs-Appellants*,

v.

GENZYME CORPORATION,

*Defendant-Appellee*

SANOFI-AVENTIS, SA; SANOFI-AVENTIS U.S., LLC,

*Defendants*.

Appeal
District Court of Massachusetts

**REPLY BRIEF OF APPELLANTS WILKINS ET AL.**

C. ALLEN BLACK, JR.
LAW OFFICE OF C. ALLEN BLACK, JR.
322 North Shore Dr.
Bldg. 1b, Ste. 200
Pittsburgh, PA 15212
(412) 908-3268

JONATHAN M. GESK
GESK MORITZ, LLC
14 East Main Street
Carnegie, PA 15106
(412) 429-9100

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

REPLY ARGUMENT …………………………………………………………………..1

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ......................................... 10

CERTIFICATE OF SERVICE ........................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

Cases

*Amoche v. Guar. Trust Life Ins. Co.*,
   556 F.3d 41 (1st Cir.2009) .................................................................................... 7
*Figueroa v. Rivera*,
   147 F.3d 77 (1st Cir.1998) ...................................................................................... 6
*Hochendoner v. Genzyme Corp.*,
   823 F.3d 724 (1st Cir. 2016) ................................................................................... 5
*Morley Constr. Co. v. Md. Cas. Co.*,
   300 U.S. 185 (1937) ............................................................................................ 6-7
*Pazol v. Tough Mudder Inc.*,
   819 F.3d 548 (1st Cir. 2016) ................................................................................... 7
*Schubert v. Genzyme*,
   2013 U.S. Dist. LEXIS 126291, at **20 (D. Utah 2013) ...................................... 1
*Sueiro Vazquez v. Torregrosa de la Rosa*,
   494 F.3d 227 (1st Cir. 2007) ................................................................................... 6
*Warth v. Seldin*,
   422 U.S. 490 (1975) ................................................................................................ 5
*Wyeth v. Levine*,
   555 U.S. 555 (2009) ................................................................................................ 1

Statutes

28 U.S.C. 1332(d) ........................................................................................................ 8

I.   **REPLY BRIEF**

   A.   **Genzyme both mischaracterizes the Plaintiffs' allegations and argues the weight of the evidence when at this stage of the litigation Plaintiffs' well-pleaded facts should be accepted as true**

This is a standard product liability case, which also includes related-tort claims that arise out of the marketing, sale, and distribution of a drug. *See Schubert v. Genzyme*, 2013 U.S. Dist. LEXIS 126291, at **20 (D. Utah 2013)(This is "a typical products liability action."). Plaintiffs allege that Genzyme sold contaminated Fabrazyme and also sold medically useless low doses of Fabrazyme when it knew or should have known that such doses could cause various injuries, including acceleration of Fabry disease and sensitization to Fabrazyme. At the very least, the low doses had no medical benefit. Both the health risks (acceleration, sensitization, etc.) and the ineffectiveness of low dose Fabrazyme were known by Genzyme but concealed by them despite a duty to disclose this information to the Plaintiffs.

Plaintiffs have not uncovered any case where a court held that a drug manufacturer may remain silent when it has information about the lack of safety or efficacy of a drug. To the contrary, the Supreme Court of the United States has held that the Food, Drug and Cosmetics Act is not intended to pre-empt state law, but rather works in harmony to protect consumers against the sale of unsafe and ineffective medication. See, *Wyeth v. Levine*, 555 U.S. 555, 578–79 (2009)("State

tort suits uncover unknown drug hazards and provide incentives for drug manufacturers to disclose safety risks promptly. They also serve a distinct compensatory function that may motivate injured persons to come forward with information.") Genzyme does not address *Wyeth* and offers no argument for why Genzyme should be permitted to mislead consumers and sell them a drug that is both dangerous and ineffective.

Instead, Genzyme seeks to recharacterize the Plaintiffs' allegations and argue the weight of evidence regarding the efficacy of low dose Fabrazyme. Genzyme states that, among other things, the Plaintiffs and Genzyme knew that the "reduced dose did not guarantee medical effectiveness" (Genzyme Brief, p. 22); Plaintiffs and Genzyme knew that low dosing was an <u>unverified method</u> of treating Fabrazyme (Genzyme Brief, p. 21); and Genzyme never represented that the "the partial dose was necessarily effective" (Genzyme Brief, p. 22). None of those statements are true. But even giving Genzyme the benefit of the most favorable reading of the allegations, these are still admissions of tortious conduct. Genzyme marketed, sold, and distributed a product – low dose Fabrazyme – that was an <u>unverified method of treatment</u> and which the Plaintiffs have adequately alleged caused them harm. Of course, a mistaken belief that low dosing did not cause harms and may be efficacious would simply amount to strict products liability and negligence. But we now know that Genzyme knew low doses were not efficacious

2

and posed other health risks, yet still sold it to maintain a share of the market for these lucrative consumers.

Putting aside the factual dispute as to the multiple misrepresentations Genzyme made throughout this drug shortage (e.g., "something is better than nothing" when they now admit that they didn't know if something was better than nothing), a company cannot inoculate themselves from liability by arguing that it never guaranteed a certain outcome. That is not the standard for strict products liability or negligence cases for prescription drugs.

Genzyme furthers this theme by arguing that one study concluded that reduced doses may be effective. (Genzyme Brief, p. 21). The evidentiary weight of those studies and Genzyme's alleged reliance on their data and findings is for another day. But the point remains, the best Genzyme can point to nearly 15 years later is that one small study found that it was possible low doses could be effective but that there was insufficient information to make that determination. The problem is that Genzyme did not tell anyone this until their internal documents were uncovered in related litigation.

There is significant evidence (even without the benefit of discovery) that Genzyme knew low doses were ineffective and potentially dangerous. As properly pled in, App. 79-80, Paragraphs 307-311 of the SAC, Genzyme was asked by the Australian medical authority whether it was safe for patients to take low dose

Fabrazyme. Genzyme responded that reducing the dose "to 0.2 mg/kg . . . across the board **would have significant clinical consequences for patients, with the expectation that many would suffer irreversible harm as a result of insufficient dosing**," and that "**treatment at a higher dose is necessary and may be life-saving**." Genzyme further stated that "reduc[ing] the dose of Fabrazyme® to 0.2 mg/kg in all patients <u>ignores the cumulative evidence</u> in the extant literature." (SAC ¶ 308). Genzyme's senior management stated that such a "blanket dose adjustment would be **insane**." (App. 80, SAC ¶ 310). Genzyme's medical director colorfully stated that the sole study even hinting that a low dose would be effective is "bullshit data."

    Given this background, the Plaintiffs' allegations establish standing as they were injured and said injuries were caused by Genzyme's conduct. The trial court and Genzyme attempt to pluck a general introductory sentence from Plaintiffs' SAC to reach the conclusion that the Plaintiffs have not pled which defect caused which harm(s). Specifically, the trial court references the allegation that "Plaintiff's clinical status has deteriorated as the Fabry disease has accelerated due to the defective Fabrazyme treatment as evidenced by the occurrence, progression, and exacerbation of at least the following injuries…[.]" (App. 18, SAC ¶ 1). But ultimately, for each Plaintiff, the SAC specifically alleges those injuries caused by low dose Fabrazyme and those injuries caused by Vesivirus contamination (which

4

is limited to vesiculating chronic non-anaphylactic rashes and the development or increased risk of fulminating Vesivius infection and hematological cancer). Other than the introductory sentence for each Plaintiff wherein the generic term "defective Fabrazyme" is used, there is no aggregated claim for injuries as Genzyme attempts to argue. (Genzyme Brief, pp. 17-18).[1] Furthermore, this Honorable Court has stated that "[a]n individual's plausible allegations of a personal injury will generally suffice to plead an injury in fact, even if the claim is ultimately lacking on the merits." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 734 (1st Cir. 2016). "Although standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal, it often turns on the nature and source of the claim asserted. The actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

---

[1] Genzyme miscites *Blum v. Yarensky*. The Supreme Court states ""Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject." The Hochendoner court is the only court that stated "Suffering one species of injury does not confer standing on a plaintiff to press claims based on another species of injury, even if the injuries share a common genus." In a standing context, the Hochendoner court should be interpreted to state that the "species of injury [in fact]" as it related to the "injurious conduct" cited in *Blum v. Yarentsky*. None of the Plaintiffs allege different "species of injury in fact," because they all derive from the exact same "injurious conduct" of Genzyme substituting unapproved low doses for full dose Fabrazyme. While the species of medical injuries (damages as opposed to injury in fact) are different, the damages are all fairly traceable to the same misconduct. Nothing more is needed for standing.

**B. Genzyme attempts to revive its subject matter jurisdiction and statute of limitations defenses that were rejected by the trial court; however, said issues were not preserved via the filing of a cross-appeal**

Genzyme argued to the trial court that Plaintiffs' claims were untimely, including Plaintiffs' putative class claims, and thus (1) Plaintiffs' claims should be dismissed with prejudice; or (2) if the trial court found that the putative class claim was untimely, there would be no federal claim and therefore no federal subject matter jurisdiction as there is a lack of completely diversity between the Plaintiffs and Genzyme. The trial court rejected those arguments and found that the Plaintiffs, via *Hochendoner I* and the tolling agreement, preserved all of their claims.

Genzyme did not appeal or cross-appeal that ruling. A factual determination by the lower court is deemed waived if it is not challenged by an appeal. The filing of a notice of appeal is a jurisdictional requirement. *Sueiro Vazquez v. Torregrosa de la Rosa*, 494 F.3d 227, 233 (1st Cir. 2007). "A party who neglects to file a cross-appeal may not use his opponent's appeal as a vehicle for attacking a final judgment in an effort to diminish the appealing party's rights thereunder." *Figueroa v. Rivera*, 147 F.3d 77, 81 (1st Cir.1998); *Sueiro Vazquez v. Torregrosa de la Rosa*, 494 F.3d 227, 232 (1st Cir. 2007). The cross-appeal requirement "is not there to penalize parties who fail to assert their rights, but is meant to protect institutional interests in the orderly functioning of the judicial system, by putting

opposing parties and appellate courts on notice of the issues to be litigated and encouraging repose of those that are not." *Id.*; quoting *Morley Constr. Co. v. Md. Cas. Co.*, 300 U.S. 185, 191 (1937).

Moreover, Genzyme's argument has previously been raised and rejected in this Circuit. Genzyme predicates its subject matter argument on the purported error of the trial court in determining the statute of limitations. This Honorable Court has already confronted and dismissed such a two-step argument for divesting subject matter jurisdiction. "We have distinguished between a district court's conclusion regarding the 'ultimate question' whether it has subject matter jurisdiction under CAFA and the district court's resolution of specific factual disputes in the course of reaching that conclusion." *Amoche v. Guar. Trust Life Ins. Co.*, 556 F.3d 41, 48 (1st Cir.2009). "The former determination, we have explained, is evaluated de novo, while the latter is reviewed for clear error." *Pazol v. Tough Mudder Inc.*, 819 F.3d 548, 551 (1st Cir. 2016). Even though subject matter jurisdiction can be raised at any time, the underlying facts that lead to a determination of jurisdiction cannot be challenged via an appeal, regardless of whether the issue was waived or preserved.

While a federal court normally would require complete diversity between the parties, there is an exception when the plaintiffs plead under the Class Action Fairness Act. In fact, there is no procedure to divest a court of federal subject

matter jurisdiction under 28 U.S.C. 1332(d) after a class is properly pled, even if the case is ultimately not certified as a class or some plaintiffs are dismissed as to standing.

    c.    **Ms. Wilkins' state court claims were not addressed by the trial court and should be permitted to proceed**

Contrary to Genzyme's contention, Ms. Wilkins did plead a negligence per se claim as part of the Kentucky and Indiana Product Liability Acts. App. 117-118, ¶ 370(t), ¶ 377(t) and App. 44 FN 2); *Cf.* Gen. Br. p. 40. Ms. Wilkins' negligence per se, fraud/fraudulent concealment, and breach of fiduciary duty claims were not analyzed by the trial court, even though there is an extensive and unique narrative of the factual basis for Ms. Wilkins claims, as well as a different source of state law than the other sensitization claims. Therefore, these claims should proceed.

## II. CONCLUSION

It is indisputable that Genzyme marketed, sold, and distributed a drug in a dosage that had not been subjected to any testing, let alone clinical trials, and that had not been approved by the FDA. Plaintiffs have plausibly alleged that this caused various physical injuries to them, including an acceleration of their disease and a sensitization to the drug. Medical experts, after reviewing the specific records of each Plaintiff and the historical data on disease progression of Fabry patients throughout the world, will opine on general and specific causation when

the time comes. But such medical evidence and expert testimony is never required to counter a standing defense or a motion to dismiss.

Respectfully Submitted:

Date: March 1, 2023        /s/ C. Allen Black, Jr.

/s/ Jonathan M. Gesk

# CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

I, Jonathan M. Gesk, certify as follows:

1)     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains less than 6,500 words excluding the exempted sections.

2)     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements because this brief has been prepared in 14 point Times New Roman font using Microsoft Word.

# CERTIFICATE OF SERVICE

I, Jonathan M. Gesk, hereby certify that on March 1, 2023, I filed the foregoing electronically with the United States Court of Appeals for the First Circuit using the CM/ECF system and caused it to be served on all registered participants via the Notice of Electronic Filing.

Dated: February 24, 2023

/s/ Jonathan M. Gesk

Counsel for the Plaintiffs
Jonathan M. Gesk
PA I.D. No. 205678
GESK MORITZ, LLC
14 East Main Street
Carnegie, PA 15106
Telephone: 412.429.9100
Email: jgesk@gesklaw.com