NO. 22-1782

# In the United States Court of Appeals for the First Circuit

TRINA WILKINS; JAMES BISHOP; LISA BISHOP; AMBER BRITTON;
TONI CORDOVA; JOHN CORTINA; JILL CORTINA; GEORGE DEMKO;
DOVAN HELTON; MARY HELTON; NATE BROOKS; SYDNEY JOHNSON;
PLAINTIFF D.J.; DAMON LAFORCE; MICHAEL MASULA; ERIN MASULA;
JAMES MATTHEWS; THOMAS OLSZEWSKI; DARLENE COOKINGHAM;
THOMAS STANZIANO; WENDY STANZIANO; EDDIE VIERS, individually as
surviving spouse of Teresa Viers, deceased, AND as Personal Representative of the
ESTATE OF TERESA VIERS; WILLIAM MCNEW; JEANNE WALLACE
individually as surviving spouse of Joseph Wallace, deceased, AND as
Personal Representative of the ESTATE OF JOSEPH WALLACE;
JAMES WALLACE; and SAMUEL WALLACE,

*Plaintiffs-Appellants*,

v.

GENZYME CORPORATION,

*Defendant-Appellee*

SANOFI-AVENTIS, SA; SANOFI-AVENTIS U.S., LLC,

*Defendants*.

**Appeal**
**District Court of Massachusetts**

**SUPPLEMENTAL BRIEF OF APPELLANTS WILKINS ET AL.**

C. ALLEN BLACK, JR.
LAW OFFICE OF C. ALLEN BLACK, JR.
322 North Shore Dr.
Bldg. 1b, Ste. 200
Pittsburgh, PA 15212
(412) 908-3268

JONATHAN M. GESK
GESK MORITZ, LLC
14 East Main Street
Carnegie, PA 15106
(412) 429-9100

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

I. INTRODUCTION AND SUMMARY OF THE ARGUMENT ................... 1

II. BRIEF TIMELINE OF KEY DATES AND EVENTS ................................ 2

III. LEGAL ARGUMENT ................................................................................ 5

    **a. Indiana Journey's Account Statute § 34-11-8-1(a) applies to the Wilkins claims because the Hochendoner/Adamo action was dismissed without prejudice due to a matter of form, not the merits** ........................... 5

    **b. Indiana Journey's Account Statute was timely invoked since the three-year period in which to re-file a "continuation" action was tolled by mutual agreement of the parties** .................... 6

    **c. Applying Indiana Journey's Account Statute under the Class Action Fairness Act in Wilkins will not create a "follow-on" class or "stacking" of CAFA claims because Wilkins is a "continuation" of the original class claims** ........................... 8

    **d. Genzyme misconstrued the basis for the class claims at oral argument** ................... 13

IV. CONCLUSION ......................................................................................... 14

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ..................................... 17

CERTIFICATE OF SERVICE ............................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

## Cases

*American Pipe & Construction Co. v. Utah*,
414 U.S. 538, (1974)..............................................................................11

*Basch v. Ground Round, Inc.*,
139 F.3d 6 (1st Cir. 1998)............................................................10, 11

*Circle C Constr., LLC v. Nilsen*,
484 S.W.3d 914 (Tenn. 2016)........................................................7, 8

*Correia v. Fitzgerald*,
354 F.3d 47 (1st Cir. 2003)...............................................................9

*Crown, Cork & Seal Co. v. Parker*,
462 U.S. 345, (1983).........................................................................11

*Eads v. Cmty. Hosp.*,
932 N.E.2d 1239 (Ind. 2010)............................................................9

*Gomez v. St. Vincent Health, Inc.*,
622 F. Supp. 2d 710 (S.D. Ind. 2008)............................................11

*Griffin v. Singletary*,
17 F.3d 356 (11th Cir.1994)............................................................11

*Hochendoner v. Genzyme Corp.*,
95 F. Supp. 3d 15 (D. Mass. 2015).........................................*passim*

*Hochendoner v. Genzyme Corp.*,
823 F.3d 724 (1st Cir. 2016)....................................................*passim*

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
779 F.3d 34 (1st Cir. 2015)..............................................................10

*Knudsen v. Liberty Mut. Ins. Co.*,
411 F.3d 805 (7th Cir.2005).............................................................12

*Leathermon v. Grandview Mem'l Gardens, Inc.*,
2011 WL 2445980 (S.D. Ind. June 15, 2011).................................8

*McKowan Lowe & Co. v. Jasmine, Ltd.*,
295 F.3d 380 (3d Cir.2002)...............................................................11

*Moniz v. Bayer A.G.*,
447 F. Supp. 2d 31 (D. Mass. 2006).........................................12, 13

*Munoz v. Woroszylo*,
29 N.E.3d 164 (Ind. Ct. App. 2015)................................................6

ii

*Rodi v. S. New England Sch. Of Law*,
    389 F.3d 5 (1st Cir. 2004)................................................................9, 10
*Schubert v. Genzyme Corp.*,
    2013 WL 6809143 (D. Utah 2013).......................................................4
*Standard Fire Ins. Co. v. Knowles*,
    568 U.S. 588 (2013)......................................................................14, 15
*Vesolowski v. Repay*,
    520 N.E.2d 433 (Ind. 1988)...............................................................6
*Vincent v. Money Store*,
    915 F. Supp. 2d 553 (S.D.N.Y. 2013)…………………………........................9

**Statutes**

Indiana Code § 34-11-8-1...........................................................*passim*

**Rules**

Fed. R. Civ. P. 12(b)...........................................................................12
Fed. R. Civ. P. 15.....................................................................10, 11, 15
Fed. R. Civ. P. 15(c)(1)(b)............................................................11, 13
Fed. R. Civ. P. 20.............................................................................5, 7
Fed. R. Civ. P. 23(a).........................................................................15

**Other Authorities**

Jewett, C., NYTimes (May 17, 2023) *Drug Shortages Near an All-Time High,*
    *Leading to Rationing: A worrisome scarcity of cancer drugs has heightened*
    *concerns about the troubled generic drug industry. Congress and the White*
    *House are seeking ways to address widespread supply*
    *problems*............................................................................................14

Restatement (Third) Of Agency § 8.01 (2006).........................................3

# I. INTRODUCTION AND SUMMARY OF THE ARGUMENT

This Honorable Court requested that the Plaintiffs submit this "supplemental brief addressing the potential applicability of the Indiana Journey's Account Statute to their claims." Plaintiffs assert that Indiana's Journey's Account Statute, IN Code § 34-11-8-1 (referred to hereinafter as "JAS"), applies to those claims for which the statute of limitations lapsed during the pendency of the *Hochendoner/Adamo* action, but not to the claims for which the statute of limitations has not lapsed (or even yet accrued).[1]

Specifically, the statute states:

**(a) This section applies if a plaintiff commences an action and:**

> **(1) the plaintiff fails in the action from any cause except negligence in the prosecution of the action;**

---

[1] As discussed further in this Supplemental Brief, the JAS only "saves" those claims for which the statute of limitations lapsed. Plaintiff D.J. is a minor, and thus the statute of limitations will not even begin to run until two years after he reaches the age of majority—a date in the future. Consequently, the JAS does not apply to any of Plaintiff D.J.'s claims.

Relatedly, the statute of limitations for the breach of fiduciary duty claims only begins to run when the fiduciary relationship ends: "An agent's <u>fiduciary duty</u> to a principal is generally <u>coterminous with the duration</u> of the agency relationship. However, an agent may be subject to post-termination duties applicable to the agent's use of property of the principal and <u>confidential information</u> provided by the principal or otherwise acquired in the course of the agency relationship." Restatement (Third) Of Agency § 8.01 (2006).

Since Genzyme continues to maintain a fiduciary relationship with all of the living Plaintiffs through its patient advocacy program and Fabry Registry monitoring program, the statute of limitations has not yet begun to accrue. Therefore, the JAS is inapplicable to the breach of fiduciary duty claims.

1

**(2) the action abates or is defeated by the death of a party; or**

**(3) a judgment is arrested or reversed on appeal.**

**(b) If subsection (a) applies, a new action may be brought not later than the later of:**

**(1) three (3) years after the date of the determination under subsection (a); or**

**(2) the last date an action could have been commenced under the statute of limitations governing the original action;**

**and be considered a continuation of the original action commenced by the plaintiff.**

In the present action ("the *Wilkins*" case), the JAS applies to all claims asserted by all Plaintiffs, with the exceptions noted in Footnote 1, and it saves the Plaintiffs' claims via § (a)(1). The analysis of the role of the JAS requires that two questions be answered for each claim: (1) Does the JAS apply to the claim (the test set forth in IN Code § 34-11-8-1(a))? (2) Was the JAS timely invoked (the test set forth in IN Code § 34-11-8-1(b))?

## II.   BRIEF TIMELINE OF KEY DATES AND EVENTS

A brief review of key dates is helpful in the JAS analysis. It should be noted that all *Wilkins* Plaintiffs were also Plaintiffs in either *Hochendoner* or *Adamo*. No new parties are present in *Wilkins*. [2]

---

[2]    The death of Theresa Viers and Joseph Wallace occurred after the *Hochendoner/Adamo* case was dismissed. The current Plaintiffs are the heirs

- In July 2009, Genzyme contacted U.S. Fabrazyme patients and instructed them that they would be mandated to take "low dose" Fabrazyme in lieu of full doses. Genzyme did not consult the Plaintiffs' treating physicians. APP. p. 62, ¶ 221; APP. p. 67, FN 8.

- On March 9, 2011, the *Hochendoner* action was filed in the District Court for the Western District of Pennsylvania. Venue was transferred to the District Court of Massachusetts. The Complaint included individual and class claims for Count I – Negligence; Count II – Negligence *per se*; Count III – Strict Liability; Count IV – Breach of Warranty; and other state specific claims.[3] *Hochendoner* was filed with complete diversity between the Plaintiffs and the Defendant in addition to claiming federal subject matter jurisdiction and class jurisdiction. *Hochendoner v. Genzyme Corp., 95 F. Supp. 3d 15 (D. Mass. 2015);* (ECF. No. 1, 1:11-cv-10739-DPW)

- In the spring of 2012, Genzyme began allowing Americans' prescriptions for full dose to be honored, declaring the shortage over. APP. p. 37, ¶ 92.

- On June 3, 2013, the *Adamo* action was separately filed in the District Court of Massachusetts.[4] (ECF No. 1, 1:13-cv-11336-DPW). The trial court combined *Adamo* with the *Hochendoner* action for adjudication, but *Hochendoner* and *Adamo* still remained separate cases. *Hochendoner* and *Adamo* are hereinafter collectively referred to as "*Hochendoner/Adamo*."

- On May 23, 2016, this Honorable Court dismissed without prejudice all claims for all Plaintiffs (except for Mr. Mooney's sensitization

---

covered under the scope of the Tolling Agreement discussed *infra*. The Tolling Agreement preserved the right to file Wrongful Death/Survivorship claims because it contains and "heirs and assigns" clause, to which Ms. Viers and Dr. Wallace were signatories. Tolling Agreement, Mot. For Third Amended Compl,, ECF No. 105-1, Ex. A.

[3]  Genzyme has never raised any arguments that the *Hochendoner* class claims or the individual claims were untimely filed.

[4]  The *Adamo* action included the current *Wilkins* plaintiffs who received low dose Fabrazyme: Bishop, Cordova, Cortina, Donovan Helton, Mary Helton, Sydney Johnson, Plaintiff D.J., LaForce, Matthews, Viers, Wallace, and Wilkins.

claim, which was remanded). *Hochendoner v. Genzyme Corp.*, 823 F.3d 724 (1st Cir. 2016).

- On May 17, 2017, shortly before the end of the Massachusetts savings statute, the parties signed a tolling agreement so that they could engage in settlement discussions instead of the Plaintiffs re-filing the *Hochendoner/Adamo* actions under a savings statute. (Case 1:21-cv-10023-DPW Tolling Agreement, Mot. For Third Amended Compl., ECF No. 105-1, Ex. A.), ADD. p.41.

- On February 29, 2020, upon being given notice that Genzyme was terminating the Tolling Agreement, the remaining Plaintiffs who did not settle filed the current *Wilkins* case jointly in the Southern District of Indiana.[5] APP. p. 11(ECF No. 1; Case 1:21-cv-10023-DPW). Ms. Wilkins became the lead Plaintiff because Ms. Hochendoner and Mr. Adamo both settled their claims. The *Wilkins* case consists solely of Plaintiffs from the *Hochendoner/Adamo* actions (or their heirs in instances where the injured party died). The *Wilkins* Complaint included the same primary class and individual claims as the *Hochendoner* case (Negligence, Negligence Per Se, Strict Liability, and Breach of Warranty) and related state specific claims. *Wilkins* Plaintiffs are 18 of the 81 plaintiffs in the original *Hochendoner/Adamo* action.

- On October 5, 2020, a Second Amended Complaint was filed in *Wilkins*. APP. p. 13, (ECF No. 67; Case 1:21-cv-10023-DPW). It contained all of the same original claims but also added additional claims for Count XX – Fraud; Count XXI – Fraudulent Concealment; Count XXII – Breach of Fiduciary Duty; and Count XXIII – Unjust Enrichment based on the unsealing of the discovery information in the Utah *Schubert* case on May 21, 2020. *Schubert v. Genzyme Corp.,* No. 12-cv-587, 2013 WL 6809143 (D. Utah 2013), ECF No. 207). All of the Plaintiffs requested Class status for the newly added claims based on the discovery *Schubert* unsealing discovery date.

---

[5] Only Plaintiffs Wilkins (IN), LaForce (VA), and Stanziano (FL) have sensitization claims, so filing in Indiana, Virginia, or Florida seemed logical given this Court's holding in *Hochendoner/Adamo* regarding the survival of sensitization claims.

- On January 6, 2021, the *Wilkins* case was transferred under the venue provisions back to the District Court of Massachusetts, where it was dismissed on September 14, 2022. APP. p. 16., (ECF No. 67; Case 1:21-cv-10023-DPW).

## III.   LEGAL ARGUMENT

### a.   Indiana Journey's Account Statute § 34-11-8-1(a) applies to the *Wilkins* claims because the *Hochendoner/Adamo* action was dismissed without prejudice due to a matter of form, not the merits

Under the JAS, a subsequently filed case is deemed a "continuation" of the first filed case if it was (1) dismissed, not as to the merits. IN Code § 34-11-8-1(a)(1). Thus, under the JAS, the *Hochendoner/Adamo* Plaintiffs were entitled to bring a new action in Indiana and have it be treated as a "continuation" of the first action because these Plaintiffs "fail[ed] in the action from any cause except negligence in the prosecution of the action."[6]

This Honorable Court dismissed the *Hochendoner/Adamo* actions as to a matter of form on May 23, 2016, holding that the operative complaints failed to properly plead Article III standing. This matter of form was corrected, and the *Wilkins* case was re-filed on February 29, 2020, shortly before the lapse of the

---

[6]    Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action. Fed. R. Civ. P. 20(a)(1)(A)-(B).

Tolling Agreement. Therefore, the *Wilkins* case and the claims alleged therein are a "continuation" of the respective suits detailed in *Hochendoner* and *Adamo* under the JAS.

> **b.** **Indiana Journey's Account Statute was timely invoked since the three-year period in which to re-file a "continuation" action was tolled by mutual agreement of the parties**

The second part of the JAS test is whether the JAS was timely invoked. When this Honorable Court dismissed the Plaintiffs' claims without prejudice on May 23, 2016, the Plaintiffs relied on a savings statute to preserve those claims for which the statute of limitations had lapsed during the pendency of the *Hochendoner/Adamo* action. "The Journey's Account Statute is designed to ensure that the diligent suitor retains the right to a hearing in court until he receives a judgment on the merits. Its broad and liberal purpose is not to be frittered away by narrow construction." *Vesolowski v. Repay*, 520 N.E.2d 433, 434 (Ind. 1988). "This reflects Indiana courts' general preference for deciding cases on their merits and for avoiding the construction of procedural obstacles to the presentation of such cases." *Munoz v. Woroszylo*, 29 N.E.3d 164, 170 (Ind. Ct. App. 2015). Different states have different time periods in which a "continuation" lawsuit can be filed under a savings statute. Of note, Massachusetts allows one-year to re-file, whereas Indiana allows three years.

On May 16, 2017, shortly before the one-year Massachusetts savings statute would lapse and long before the JAS would lapse, the Plaintiffs and Genzyme entered into a tolling agreement that tolled these saving statutes for the Plaintiffs. Genzyme agreed in writing that "it will not assert any defense of statute of limitations, laches *or any similar defense based upon the passage of time during the term of this Agreement* against the Plaintiffs or members of the putative class alleged in the Lawsuits, based upon claims asserted in the Lawsuits." (Case 1:21-cv-10023-DPW Tolling Agreement, Mot. For Third Amended Compl., ECF No. 105-1, Ex. A.), ADD. p.41.

Neither the Massachusetts nor the Indiana savings statutes lapsed prior to the signing of the Tolling Agreement. Therefore, an affirmative defense for a failure to re-file the *Hochendoner* and *Adamo* claims within one year in Massachusetts (or three years in Indiana) is impermissible since it would be a defense based on "the passage of time" after the Tolling Agreement had been signed. Moreover, it is a general proposition of law that a savings statute can be tolled under a tolling agreement. "The savings statute applies when the parties agree to toll the applicable statute of limitations, as the parties have done here." *Circle C Constr., LLC v. Nilsen*, 484 S.W.3d 914, 920 (Tenn. 2016).[7] Consequently, the *Wilkins* case

_____

[7]    Plaintiffs cannot identify any Massachusetts or Indiana court that has specifically addressed the issue whether a tolling agreement should be interpreted to silently disclaim the remedy of a savings statute. Indeed, no case law has been

is a timely filed "continuation" of the *Hochendoner/Adamo* cases under the mutual

agreement of the parties to allow re-filing under the JAS.

### c. Applying Indiana Journey's Account Statute under the Class Action Fairness Act in *Wilkins* will not create a "follow-on" class or "stacking" of CAFA claims because *Wilkins* is a "continuation" of the original class claims

The *Wilkins* case consists solely of those Plaintiffs who did not settle their

claims during the pendency of the Tolling Agreement. Since the *Wilkins* case is a

"continuation" of the original *Hochendoner* case under the JAS, the class claims as

originally pled in *Hochendoner* (and expressly reserved in the Tolling Agreement)

are also "continued." Indiana courts recognize that class action claims are

preserved by the JAS as well individual claims. *See e.g., Leathermon v. Grandview

Mem'l Gardens, Inc.*, No. 4:07-CV-137-SEB-WGH, 2011 WL 2445980, at *10

(S.D. Ind. June 15, 2011)("The court concludes that, under these circumstances,

Indiana's Journey's Accounts Statute saves Plaintiffs' [class] claim of fraudulent

conveyance").

Even for the sake of argument, if the JAS did not preserve the right to file

class claims after the *Hochendoner/Adamo* actions were dismissed for a matter of

form, the Federal Rules of Civil Procedure would preserve the right to plead a class

---

identified that would preclude extending the savings statute in any U.S. jurisdiction absent an express disclaimer. The most comprehensive discussion of law identified regarding a contract to toll a savings statute is the one cited in the Tennessee Supreme Court decision in *Circle C Constr. supra*.

under Fed. R. Civ. P. 15's relation back doctrine. "In a diversity case, procedure, unlike substance, is governed by federal law." *Rodi v. S. New England Sch. Of Law*, 389 F.3d 5, 19 (1st Cir. 2004), citing to *Correia v. Fitzgerald*, 354 F.3d 47, 53 (1st Cir. 2003)("Federal courts sitting in diversity apply state substantive law and federal procedural rules"). Fed. R. Civ. P. 15(c)(1)(b) would apply to *Wilkins* since the "new" facts and claims all relate back to the original and timely filed *Hochendoner* case as they "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleadings" in *Hochendoner*.[8]

---

[8] Some states followed the archaic practice of amendment estoppel for cases that are re-filed under a saving statute. These states limited the subsequent action to the claims pled in the original action; however, Indiana does not follow amendment-estoppel practice. Indiana is a notice pleading state. *See*, IN Rules of Trial Procedure, Rule 15 (amendment and supplemental pleadings) (C) Relation back of amendments. "Whenever the claim or defense asserted in the amended pleading *arose out of the conduct, transaction, or occurrence* set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

Indeed, when considering amendment estoppel, the Indiana Supreme Court issued a substantive rule of law that the "source of the liability" is the determinative factor for ruling the later filed suit is saved by the JAS, not the form of the amended claim. "We agree that a medical malpractice claim is in some respects, as the Court of Appeals put it, 'wholly different' from a general negligence claim, …. But we do not agree that the differences between the two are the 'source of the liability.'" *Eads v. Cmty. Hosp.*, 932 N.E.2d 1239, 1245 (Ind. 2010).

*Cf.* For an historical discussion of how the New York State legislature eliminated amendment estoppel practice to the application of its savings statute see *Vincent v. Money Store*, 915 F. Supp. 2d 553, 563 (S.D.N.Y. 2013)("Prior to the 1978 amendment to section 205(a), a plaintiff was required to sue upon the exact same cause of action to trigger the saving benefits of the statutory provision….

Since the *Wilkins* case alleges the same facts and set of occurrences, the *Wilkins* case should be viewed as an amendment or supplemental pleading to the "continuation" of the *Hochendoner* and *Adamo* cases (just with fewer Plaintiffs) under Rule 15. Fed. R. Civ. P. 15. It is not a "new" case, nor does it present "new" causes of action either under CAFA or the various state statutes of limitations or savings statutes, but rather additional grounds for relief from the same tortious acts. This Honorable Court has stated that "[t]he view that the pleading of cases is a game in which every miscue should be fatal is antithetic to the spirit of the federal rules." *Rodi*, 389 F.3d at 20. The same principle applies to *Wilkins*.

Since Congress did not create a savings statute (or statute of limitations) for class claims, such provisions would simply be imported from the state forum. Thus, it does not appear that there is entwinement of the class claims with any state doctrinal issue as was the case in *In Re Celexa,* where this Court would need to "unpack[] how federal law interacts with state law." *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 779 F.3d 34, 39 (1st Cir. 2015). Rather, it appears that the trial court, the Plaintiffs, and the Defendants all agree that a savings statute is imported from the forum just like a statute of limitations.

---

In 1978, the New York State Legislature amended section 205(a) by substituting the current language, permitting a second action "upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action.")

Similarly, a "continuation" of the putative class litigation by the original *Hochendoner*/*Adamo* Plaintiffs would not be "stacking" of class actions. *Basch v. Ground Round, Inc.*, 139 F.3d 6, 11 (1st Cir. 1998); s*ee also, Gomez v. St. Vincent Health, Inc.*, 622 F. Supp. 2d 710, 710 (S.D. Ind. 2008)(Identifying a Circuit split on the issue of the ability to re-file a class action by the same Plaintiffs under *Crown, Cork & Seal* and *American Pipe* when the case was not dismissed as to the merits once the statute of limitations had lapsed. "The Third Circuit's position [in *McKowan*] put it in direct conflict with only the Eleventh Circuit's opinion in *Griffin*, which had disallowed tolling for class claims in all situations. In the end, the Third Circuit explained that 'we see no good reason why class claims should not be tolled where the district court has not yet reached the issue of the validity of the class.'"). *Id.* citing *McKowan Lowe & Co. v. Jasmine, Ltd.*, 295 F.3d 380 (3d Cir. 2002) and *Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir. 1994). At no point since 2013 have any new Plaintiffs or claims appeared, with the exception of the "new" claims resulting from the discovered information from the *Schubert* unsealing.

Interpreting the JAS to allow "continuation" of the *Adamo/Hochendoner* case would not act as "encouragement to lawyers in a case of to frame their pleadings as a class action… to save members of the purported class who have slept on their rights." *Basch v. Ground Round, Inc.*, 139 F.3d 6, 12 (1st Cir. 1998).

Indeed, no one could have imagined (or engineered) a way for the pleadings of this product liability case under Fed. R. Civ. P. 12(b)(1) or Fed. R. Civ. P. 12(b)(6) to result in decadal litigation. In comparison, the *Schubert* case in Utah only took three years from removal to discovery, even though it was filed one year after *Hochendoner*. Thus, the extensive time interval should not be construed against the Plaintiffs' claims or as against anyone for that matter.

In any event, the only amendments in a "continuing" action (as is the case here) that would be considered as presenting a "new" case would be: "1) amendments that add new defendants and 2) amendments that assert a wholly distinct claim for relief into a pending suit." *Moniz v. Bayer A.G.*, 447 F. Supp. 2d 31, 37 (D. Mass. 2006); see also, *Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 807 (7th Cir.2005)(stating that for "a new claim for relief ..., the addition of a new defendant, or any other step sufficiently distinct that courts would treat it as independent for limitations purposes, could well commence a new piece of litigation for federal purposes even if it bears an old docket number for state purposes").

The court further explained the distinction between amendments versus a "new" cause of action. "[T]he plaintiffs' amendments to the class definition in the *Schillinger* [case] did not alter the substance of their original allegations while *Moniz's* [new] class definition in this case… expanded… to allege new and

unrelated misconduct for which to hold defendants liable." *Moniz.* 447 F.Supp. 2d at 37. Since none of the class action theories in *Wilkins* have been enlarged from the events that were pled under *Hochendoner/Adamo*, the class claims are not a "new" cause of action or a "follow-on" or "stacking" of class action. No intervening statute of limitations has run between the dismissal of *Adamo/Hochendoner* under the JAS and the continuation of the litigation in *Wilkins*. The cases *American Pipe* and its progeny are simply inapplicable to *Wilkins* because the current case is a "continuation" of the previous litigation.[9]

### d. Genzyme misconstrued the basis for the class claims at oral argument

In response to a direct question from the Honorable Judge Kayatta at oral argument, Genzyme stated that the only basis for the Plaintiffs' class claims is fraud, and that the fraud claim was first filed in October 2020. Genzyme is wrong on the first count. All of the current Plaintiffs have asserted class claims sounding in negligence, negligence *per se*, strict liability, and breach of warranty since the original *Hochendoner* action filed in 2011 (less than two years from the start of the shortage). However, no product liability or class claims in *Wilkins* have been filed "more than 10 years after the relevant event occurred." Genzyme Brief p. 3. The

---

[9] *American Pipe* does, however, save the individual *Adamo* claims when examining the time it took for *Adamo* Plaintiffs to file their individual product liability claims (not as a class) after *Hochendoner*.

events and Plaintiffs of the "continuation" case, *Wilkins,* are the same as in *Hochendoner/Adamo*. Genzyme is correct, however, that additional class claims sounding in fraud were added in October 2020 (the Second Amended Complaint) because those causes of action were only discovered after the unsealing of the *Schubert* action from the District of Utah on May 21, 2020. Of note, both the individual and class claims for fraud would still have been viable had the information been produced through discovery under the relation back doctrine codified in Rule 15 (c)-(d). Fed. R. Civ. P. 15. The *Schubert* unsealing simply allowed the remaining *Hochendoner/Adamo* Plaintiffs to bring the fraud claims sooner than otherwise.

## IV. CONCLUSION

This is a case of national importance. By applying the JAS to "save" both the individual and class claims as part of the Tolling Agreement, this Honorable Court can ensure "[f]ederal court consideration of interstate cases of national importance[]," an express objective of the Class Action Fairness Act. *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 589 (2013). Drug shortages are at their peak in the past ten years.[10] Not only is a class-wide litigation of malfeasance

---

[10] C. Jewett (May 17, 2023) NY Times, *Drug Shortages Near an All-Time High, Leading to Rationing: A worrisome scarcity of cancer drugs has heightened concerns about the troubled generic drug industry. Congress and the White House*

during a national drug shortage of federal importance, but drug shortages also affect the ability of the individual states to protect public health and safety. Moreover, state-court adjudication regarding the use of non-FDA approved drugs and doses creates the threat of inconsistent or varying adjudications that could establish incompatible interstate standards of conduct during national drug shortages. Such a threat of inconsistency is one reason that Rule 23(a) was promulgated. Fed. R. Civ. P. 23(a). Savings statutes, such as the JAS, are enacted by legislatures or adopted via common law for the exact purpose of having the claims heard on the merits after procedural deficiencies have been cured.

As such, allowing the class claims to proceed as well as individual claims is an efficient mechanism that meets the exact purpose that Congress envisioned for the Class Action Fairness Act and which the Supreme Court has upheld unanimously in *Standard Fire Ins. Co. Id.*

---

*are seeking ways to address widespread supply problems.* Available at
https://www.nytimes.com/2023/05/17/health/drug-shortages-cancer.html.

Respectfully Submitted:

Date: May 24, 2023

/s/ <u>C. Allen Black, Jr.</u>

/s/ <u>Jonathan M. Gesk</u>

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

I, Jonathan M. Gesk, certify as follows:

1) This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains less than 6,500 words (or 15 pages) excluding the exempted sections.

2) This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements because this brief has been prepared in 14 point Times New Roman serif font using Microsoft Word.

Dated: May 24, 2023

/s/ <u>Jonathan M. Gesk</u>

## CERTIFICATE OF SERVICE

I, Jonathan M. Gesk, hereby certify that on March 1, 2023, I filed the

foregoing electronically with the United States Court of Appeals for the First

Circuit using the CM/ECF system and caused it to be served on all registered

participants via the Notice of Electronic Filing.

Dated: May 24, 2023

/s/ Jonathan M. Gesk

Counsel for the Plaintiffs Jonathan
M. Gesk PA I.D. No. 205678 GESK
MORITZ, LLC 14 East Main Street
Carnegie, PA 15106 Telephone:
412.429.9100 Email:
jgesk@gesklaw.com